**Michael WELLS, Petitioner,**

v.

**POLICE AND FIREMEN'S RETIRE-
MENT AND RELIEF BOARD,
Respondent.**

**No. 81–795.**

District of Columbia Court of Appeals.

Argued May 20, 1982.

Decided Aug. 16, 1982.

Rehearing En Banc Granted and Opinion Vacated Oct. 5, 1982.

Gerald C. Baker, Lindham, for petitioner.

Diana M. Savit, Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before NEWMAN, Chief Judge, and NE-BEKER and FERREN, Associate Judges.

NEWMAN, Chief Judge:

Petitioner seeks review of the Police and Firemen's Retirement and Relief Board's denial of his claim for disability retirement. We find the Board's decision to be supported by substantial evidence, and hereby affirm.

I

On April 24, 1978, petitioner, an officer with the Metropolitan Police Department (hereinafter "the Department") was shot while on duty. He suffered a gunshot wound to his left arm and chest. The bullet lodged in his chest and was never removed. After the wound healed, petitioner was left with residual impairment in his nerve and muscle function.

Petitioner began a rehabilitation program in June, 1978. The motion and strength in his left arm and hand improved, but he continued to experience pain and parathesias (a burning or crawling sensation of the skin) in his left arm. Surgery in March 1979, did not relieve this condition.

Dr. Alfred A. Pavot was Officer Wells' treating physician during his rehabilitation. On December 12, 1979, petitioner was presented before Dr. Pavot and the other members of the Pain Clinic at Greater Southeast Community Hospital. After the presentation, Dr. Pavot reported that petitioner had "achieved just about maximum recuperation from his injury," and that he would "be left with some permanent residuals of his left medial neuropathy which are manifesting themself [sic] with some impaired sensation in the left hand and some weakness in the muscles supplied by the left median nerve." Dr. Pavot also reported that petitioner "could return to limited duty on a full-time basis such as manning a desk in the police station and carrying out other sort of work which would not entail grappling with an assailant and similar types of activity which would necessitate normal grasp and sensory perception in both hands."

Petitioner was reexamined by specialists at the Pain Clinic in July 1980. They determined that he had "reached essentially a status quo position," and that he had difficulty flexing his left finger against resistance. This would prevent him from firing a police revolver. The specialists also found that petitioner had a partial permanent disability of approximately 15% of the total body, but that he could return to light duty "without any significant difficulty."

In August 1980, petitioner was examined by the Board of Police and Fire Surgeons (hereinafter "Surgeons' Board"). It made findings similar to those of the Pain Clinic, but found a functional impairment of only five per cent.

Petitioner filed a claim for disability retirement. A hearing was held before the Board on November 6, 1980. Dr. Victor Esch testified on behalf of the Surgeons' Board, stating that petitioner could perform some limited duty work on a full-time basis. He recommended that petitioner not be assigned to a busy precinct where he might have to assist with prisoners, but concluded that petitioner could handle a desk job at Police Headquarters where he would have no contact with prisoners.

Petitioner also testified at the hearing, stating that, at times, he feels pain, a burning sensation and/or numbness in his left hand and arm. He also experiences pain in his rib cage where the bullet lodged. Petitioner stated that because of the numbness and pain in his arm and hand, he was not sure that he could safely handle any of the weapons used in the Department.

According to petitioner, on April 14, 1980, he was ordered to accept a limited duty status position for an indefinite period of time. He refused to accept the position because of a Department policy which requires an officer on limited duty to return to full duty after a specified period of time. Since petitioner did not believe he would ever be able to return to full duty, he would not accept the limited duty assignment. Petitioner also stated that he refused to accept the limited duty position because his disability would negate his chances for promotion and because the limited duty position would have an adverse effect on his pension rights. Petitioner has been on an

absent without leave status since he refused the limited duty position. He stated that he would not return to work unless he received an offer in writing of a full-time limited duty position.

## II

■ Petitioner contends that the Board's conclusions of fact are contrary to the weight of the evidence. It is evident from the record, however, that the Board's finding that petitioner could perform useful and efficient service for the Department was supported by substantial evidence. Petitioner's testimony primarily supported his claim that he could no longer perform his old job or any position entailing full police duties. The question before the Board, however, is whether he is "disabled for useful and efficient service in the grade or class of position last occupied . . . ." D.C. Code 1981, § 4–607(2). *Rzepecki v. Police and Firemen's Retirement and Relief Board*, D.C.App., 429 A.2d 1388 (1981); *Seabolt v. Police and Firemen's Retirement and Relief Board*, D.C.App., 413 A.2d 908 (1980). This court has interpreted this provision in terms of the officer's inability to perform work in any position at the same salary level as he previously earned. *Coakley v. Police and Firemen's Retirement and Relief Board*, D.C.App., 370 A.2d 1345, 1349–50 (1977); *Seabolt v. Police and Firemen's Retirement and Relief Board, supra* at 910–11.

Petitioner cites *Torvik v. Police and Firemen's Retirement and Relief Board*, D.C.App., 406 A.2d 1264 (1979), and *Jones v. Police and Firemen's Retirement and Relief Board*, D.C.App., 375 A.2d 1 (1977), in support of his position. In *Jones,* the court refers to the petitioner's "old job" rather than a job of the same "grade or class of position" as the old job. These references may be explained, however, by the fact that in that case the petitioner was actually capable of performing the very same job she last occupied.

In *Torvik,* this court reversed the Board's finding that the petitioner was not eligible for retirement. The court stated that if the petitioner could perform his old job, he would not be eligible for disability. The "old job" dicta in *Jones* was repeated, but the court stated that even if it relied on *Coakley* alone, the decision would be the same because there was no evidence of any position that the petitioner could perform. 406 A.2d at 1266.

In *Seabolt v. Police and Firemen's Retirement and Relief Board, supra,* the court limited *Torvik* to the facts of that case, stating that in *Torvik* there was no substantial evidence to support the Board's finding of no disability. *Id.* at 912. The court in *Seabolt* stressed the teaching of *Coakley:* "A petitioner must . . . establish disability from performing any job in the category before qualifying for retirement . . . ." *Seabolt, supra* at 912. This clearly was not established in the present case.

■ Petitioner claims that the Board erred in refusing to retire him because there was no evidence that there was a permanent, light-duty position available for him. Under *Seabolt,* however, the "petitioner bears the burden of showing that there is no job available which he can perform in the grade or class of position he last occupied in the Department." *Woody v. Police and Firemen's Retirement and Relief Board*, D.C.App., 441 A.2d 987, 989 (1982) (citations omitted). Petitioner will be able to show that no appropriate job is available if the Department fails to place and keep him employed in such a job. *Id.*[1]

Since petitioner did not meet the burden of proof established in *Seabolt* and *Woody,* the Board did not err in refusing to retire him.

*Affirmed.*

PER CURIAM
ORDER

On consideration of petitioner's petition for rehearing en banc, and it appearing that the majority of the judges of this court has voted to grant the aforesaid petition, it is

---

1. This case graphically demonstrates the difficulty which police officers, suffering partial disability in the line of duty, continue to experience given the provisions of D.C. Code 1981, § 4–607(2) as construed by us in *Seabolt.* Perhaps a legislative corrective is appropriate.

ORDERED that petitioner's petition for rehearing en banc is granted and that the opinion and judgment of August 16, 1982, are hereby vacated. The certified copy of the opinion and judgment heretofore transmitted in lieu of mandate on September 7, 1982, shall be returned forthwith. It is

FURTHER ORDERED that the Clerk shall schedule this matter for argument before the court sitting en banc as soon as the business of the court permits. Counsel are hereby directed to provide ten additional copies of the briefs heretofore filed to the Clerk on or before Monday, October 25, 1982.