**Ronald COCOME, Appellant,**

v.

**DISTRICT OF COLUMBIA LOTTERY AND CHARITABLE GAMES CONTROL BOARD, Appellee.**

**No. 88–653.**

District of Columbia Court of Appeals.

Submitted April 18, 1989.

Decided June 28, 1989.

Keith A. Rosenberg, Washington, D.C., and Carol A. Zuckerman were on the brief, for appellant.

Frederick D. Cook, Jr., Corp. Counsel, with whom Charles L. Reischel, Deputy Corp. Counsel, and Charlotte M. Brookins, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee. ·

Before FERREN and BELSON, Associate Judges, and KERN, Senior Judge.

BELSON, Associate Judge:

Appellant is a former employee of the District of Columbia Lottery and Charitable Games Control Board ("Lottery Board"). On June 21, 1983, because of a suspected conflict of interest violation, appellant's superior gave him the choice of resigning or facing administrative action and possible criminal charges. Appellant tendered his resignation, but later petitioned the Office of Employee Appeals ("OEA") for review of the circumstances of his resignation. The OEA Hearing Examiner found that appellant's resignation was involuntary because the Lottery Board had misled him concerning his employment rights, and recommended reinstatement with back pay and benefits as of the date of appellant's resignation. The OEA adopted the examiner's Recommended Initial Decision, and later affirmed it on the Lottery Board's petition for review. On the Board's subsequent petition for judicial review, however, the Superior Court found that appellant had resigned voluntarily and therefore reversed the OEA decision. We conclude that OEA's findings were supported by substantial evidence, reverse the judgment of the Superior Court, and remand the case for entry of an appropriate order.

The record evidence shows that in July 1981 the Lottery Board retained appellant as a consultant. In December of that year, the Board hired appellant as Chief of the Charitable Games Division. At that time, the Board informed appellant that the position was temporary, and would eventually be advertised as a regular career service position. *See* D.C.Code § 1–608.1 (1987 Repl.). Until that time, appellant was categorized as an "expert" in an "Excepted Service" position. *See* D.C.Code §§ 1–610.1 through 1–611.2 (1987 Repl.). Appellant was further told that once the Board advertised the position as permanent he would be eligible to apply but would have to compete with other applicants.

On November 14, 1982, the Board selected appellant to fill the position as a Career Service employee. Career Service appointments entail a one-year probationary period. *See* District of Columbia Personnel Regulations § 813.1. Appellant inquired as to whether the Board would credit his ten months of service in the Excepted Service toward the one-year probationary period, and was told that it would not.

About seven months later, on Monday, June 13, 1983, pursuant to a reduction in force (RIF), Brant Coopersmith, Chairman of the Lottery Board, met with appellant,

and advised him to start looking for another job because his position would be abolished effective June 17 due to budget cuts. He also informed Mr. Cocome that as a probationary employee Mr. Cocome had no retention or procedural rights. It appears, however, that the Board did not formally abolish appellant's position by June 17.

On Saturday, June 18, appellant contacted Mr. Dan Bower of Scientific Games, Inc., a vendor doing business with the Lottery Board, to inform him that effective June 17 he no longer worked with the Board. He also inquired about employment opportunities. Mr. Bower engaged appellant to assist in an effort to establish a lottery in Brazil. This venture required appellant to travel to Brazil. In exchange for appellant's services, Mr. Bower agreed that Scientific Games, Inc., would pay for appellant's airfare and expenses.

Appellant still had unfinished matters at the Lottery Board and planned to return to his former office the following week to complete them, even though he thought his position had been abolished and he expected no compensation. On June 21 the airline tickets from Scientific Games arrived at the Lottery Board offices via Federal Express. Before appellant arrived at the office that morning, the secretary to Mr. Willis Johnson, the Lottery Board's Deputy Director, opened the package addressed to Mr. Cocome. She showed Mr. Johnson the tickets. Later that day, on the advice of the Lottery Board's legal counsel, Deputy Director Johnson met with appellant, and offered him the choice of resigning by 9:00 the next morning or having the matter referred for adverse personnel action and possible prosecution for violation of conflict of interest laws.

Appellant consulted with an attorney who had to rely solely on the information appellant supplied because of the short time appellant was given to respond. The attorney was unfamiliar with District of Columbia personnel law and was unable to gain access to other materials on the subject or consult the District of Columbia Office of Personnel. Appellant's position supposedly had been abolished and because of his earlier conversation with the Chairman, he believed that he had no retention or procedural rights. Appellant therefore submitted his resignation the following morning as requested.

Appellant applied to the District of Columbia Office of Unemployment Compensation for benefits. On January 31, 1984, the appeals examiner for that office issued a decision awarding him unemployment compensation. The decision indicated that the Lottery Board had disregarded appellant's rights and that appellant was a permanent employee at the time he resigned. As a result of that decision, appellant immediately petitioned OEA for reinstatement with back pay asserting that he was a permanent employee at the time of his resignation, and that as a permanent employee he was entitled to all of the protections granted to District of Columbia Career Service employees including notice and a hearing. *See* D.C.Code § 1–608.1(12) (1981). Therefore, appellant contends, when the Lottery Board informed him that he was a probationary employee with no appeal rights, the agency misled him rendering his resignation involuntary and hence, null and void. OEA ruled in favor of appellant, concluding that due to the Board's misrepresentation of appellant's employment rights, his resignation must be deemed involuntary, and awarding appellant reinstatement with back pay. The Lottery Board appealed that ruling to the Superior Court.

On a petition for review of an agency finding, the Superior Court does not substitute its judgment for that of the agency. Rather, it reviews the agency findings to determine whether they are supported by substantial evidence. *Kegley v. District of Columbia*, 440 A.2d 1013, 1018–19 (D.C. 1982). On appeal from the Superior Court's disposition of a petition from an agency finding, our review is the same as it would be if we were reviewing the agency decision directly. *District of Columbia General Hospital v. Office of Employee Appeals*, 548 A.2d 70, 73 (D.C.1988), citing *Kegley, supra.* Accordingly, we must determine whether the agency decision, rather than the trial court's order, was sup-

ported by substantial evidence. *District of Columbia General Hospital, supra,* 548 A.2d at 76, *Woody v. Police and Firemen's Retirement and Relief Board,* 441 A.2d 987, 988 (D.C.1982).

At various junctures, the Lottery Board has raised three contentions in support of its position that the OEA Review Panel decision should be set aside: (1) that appellant's resignation was voluntary and therefore he should be held to it; (2) that appellant's appeal to the OEA was untimely; and (3) that OEA's remedy, reinstating appellant to his former position with back pay, is inappropriate.[1] We reject all three of the Board's contentions.

■ We turn first to the question of whether appellant had completed his probationary term and was thus a permanent employee when he resigned. The OEA Review Panel adopted the Hearing Examiner's recommended ruling in appellant's favor on this point. The OEA Review Panel found that the Lottery Board did not dispute appellant's permanent status before the Hearing Examiner. Consequently, the Review Panel deemed the Lottery Board's contention in this regard a new claim or defense. Under OEA Rule 603.1(i), a new claim or defense must be filed no later than five days before the pre-hearing date or it is deemed waived. Noting that the Lottery Board had not raised this issue in timely fashion, the OEA Review Panel ruled that the Lottery Board had waived it. Accordingly, the OEA Review Panel ruled that appellant was a permanent employee.

This court defers to an agency's interpretation of its own regulations unless we find it plainly erroneous or inconsistent with the statute the agency is administering. *See Totz v. District of Columbia Rental Ac-*

*commodations Comm'n,* 412 A.2d 44, 46 (D.C.1980). We find the agency's interpretation reasonable in this instance. Moreover, the record supports the Review Panel's ruling that the Lottery Board had not previously contested appellant's status as a permanent employee. Thus, there is substantial evidence in the record to support the OEA Review Panel's ruling that the Lottery Board was barred from contesting the issue and also from challenging its further ruling that appellant was a permanent employee.

■ The determination that appellant was a permanent employee resolves the first two issues raised by the Board: *viz.,* whether appellant's resignation was voluntary and whether his appeal was untimely. The OEA Review Panel found that appellant's resignation was involuntary on the basis that the Lottery Board misled appellant by telling him that as a probationary employee he had no retention or procedural rights. In so finding, OEA relied on *Christie v. United States,* 518 F.2d 584, 207 Ct.Cl. 333 (1975), for the proposition that a resignation may be regarded as involuntary where an agency makes a misrepresentation to an employee regarding his rights, and the employee who resigns detrimentally relies on that misrepresentation.[2] We agree with OEA. *See also, Covington v. Department of Health and Human Services,* 750 F.2d 937, 943 (Fed.Cir. 1984) ("In this case, the agency was responsible for the employee's lack of an informed choice. A decision made 'with blinders on', based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process." (Citation omitted)). Because OEA adjudicated the issue of appellant's

---

1. The OEA Review Panel addressed six issues in ruling in favor of appellant. Arguably, on appeal to the Superior Court the Board raised only two of these issues, the timeliness of appellant's appeal to OEA and OEA's choice of remedy. The Superior Court, however, reversed the OEA decision on the basis of neither of these issues. Instead, the Superior Court ruled in favor of the Lottery Board on the basis that appellant had voluntarily resigned. Conversely, before this court, the Lottery Board has taken the position that appellant resigned voluntarily, apparently

abandoning the issues upon which it initially sought review in the Superior Court. Because we hold against the Board on all three issues, we decline to reach the question of which of the issues, if any, are properly before us.

2. While the discharged employee in *Christie* failed to show detrimental reliance, the record in this case demonstrates clearly that appellant relied on the representation of the Board Chairman in electing to resign.

status as a permanent employee in his favor, he had the rights of a permanent employee, and the Lottery Board's advice to the contrary was misinformation.[3] *See, e.g.,* D.C.Code § 1–608.1(12) (1987 Repl.); *see generally* District of Columbia Personnel Regulations, Chapter 24 (RIF procedures). Thus, there is substantial evidence in the record to support the OEA Review Panel's conclusion that appellant's resignation was involuntary.

 On the issue of the timeliness of appellant's petition for review by OEA, the OEA Review Panel affirmed the Hearing Examiner's conclusion that the fifteen-day time limit for such appeals, *see* OEA Rule 602.5, 27 D.C.Reg. 4352 (1980), should be deemed waived pursuant to OEA Rule 602.2. Under OEA Rule 602.2, OEA may waive the fifteen-day time limit for appeals "for good cause" as it is not required by statute. 27 D.C.Reg. 4351 (1980). In this case, OEA found that because the Lottery Board affirmatively misinformed appellant as to his rights, and because appellant appealed to OEA as soon as he discovered those rights, there was "good cause" to waive the time requirement. We cannot say that OEA's interpretation of its own regulations is plainly erroneous. *See Totz, supra.* Given appellant's adjudicated status as a permanent employee, there is substantial evidence to support the OEA Review Panel's conclusion that appellant's appeal was timely.

 Finally, we turn to the issue of the OEA Review Panel's choice of remedy. As with the issue of appellant's employment status, the OEA Review Panel found that the Lottery Board had failed to raise the issue of remedy in timely fashion in accordance with OEA Regulations. Appellant, however, had consistently requested reinstatement with back pay. The OEA Re-

view Panel thus deemed the issue waived by the Lottery Board. As we have previously stated, we do not find OEA's interpretation of its regulations and review procedures plainly erroneous in this regard. *See supra* p. 550. There is substantial evidence in the record to support the OEA Review Panel's conclusion that appellant had consistently requested the remedy of reinstatement with back pay and that the Lottery Board had failed to preserve the issue.[4]

In sum, we find substantial evidence in the record to support the OEA Review Panel's conclusion that appellant was a permanent employee on the basis that the Lottery Board had waived the issue. Having resolved this issue in appellant's favor, we further find substantial evidence to support the Review Panel's conclusion that the Board affirmatively misled appellant as to his rights. This finding is sufficient to support the Review Panel's further decision to waive for good cause the fifteen-day time limit for appeals as well as its determination that appellant's resignation was involuntary. Finally, on the remedy issue, we find substantial evidence in the record to support the OEA Review Panel's ruling that the Lottery Board had also failed to raise, and thus did not properly preserve, this issue. Accordingly, the judgment of the trial court is reversed and this case is remanded to the trial court so that it can order the reinstatement of the decision of the OEA Review Panel.

*Reversed and remanded.*

---

3. The Board is foreclosed from relitigating appellant's employment status because of its procedural default.

4. Because we agree with the agency's resolution of this issue on procedural grounds, we do not reach the substantive issue of whether reinstatement with back pay is the appropriate remedy

in this case. *See generally Scharf v. United States,* 710 F.2d 1572, 1575–76 (Fed.Cir.1983) (holding that reinstatement with back pay is appropriate remedy when a protected civil service employee's retirement is rendered involuntary because the employing agency misled the employee as to his rights.